UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| J&H MARINE, INC.,<br><br>    Plaintiff,<br><br>  v.<br><br>R/V POLECAT'S REVENGE, et al.,<br><br>    Defendants. | Case No. 2:23-cv-02550-DAD-CSK<br><br>FINDINGS AND RECOMMENDATIONS GRANTING PLAINTIFF'S MOTION FOR DEFAULT JUDGMENT<br><br>(ECF No. 32) |

Pending before the Court is Plaintiff J&H Marine, Inc.'s motion for default judgment pursuant to Federal Rules of Civil Procedure 55(b)(2).[1] (ECF No. 32.) This motion was set for hearing for August 20, 2024. (ECF No. 34.) Defendants Joseph Duran Norman and Polecat's Revenge, Official No. 1151072, its engines, tackle, machinery, furniture, apparel, appurtenances, etc. ("Vessel") did not file a response to the motion, nor have they appeared in this case in any way. As a result, on July 31, 2024, Plaintiff's motion was taken under submission without argument pursuant to Local Rule 230(c) and (g). (ECF No. 35.) For the reasons stated below, the Court recommends Plaintiff's motion for default judgment be GRANTED, and that judgment be entered in favor of Plaintiff.

---

[1] This matter proceeds before the undersigned pursuant to 28 U.S.C. § 636(b)(1)(A) and Local Rule 302(c)(19).

1

## I. BACKGROUND

### A. Factual Background

The verified Complaint alleges that on or about December 6, 2022, Plaintiff and Defendant Norman executed a J&H Marine Customer Agreement and Authorization (the "Contract") for repair of the Vessel. Compl. ¶ 7, Exh. 1 (ECF No. 1). Pursuant to the Contract, Plaintiff agreed to perform repairs and renovations to the Vessel in return for payment from Defendant Norman. *Id.* After performing authorized repairs to the Vessel, Plaintiff submitted an invoice to Defendant Norman on or about February 28, 2023 for $31,183.43. *Id.* ¶ 9. After deducting payments made by Defendant Norman in December 2022 for $3,500 and in January 2023 for $5,000, the remaining balance owed on the February 28, 2023 invoice was $22,683.43. *Id.* ¶¶ 9, 15, Pl. Mot. Exh. A. On or about April 11, 2023, Plaintiff completed additional work to the Vessel and submitted a separate invoice to Defendant Norman for $13,850.76, bringing the total amount owed for fees and repairs to $36,534.30. *Id.* ¶ 10. On or about July 10, 2023, Plaintiff submitted an additional invoice to Defendant Norman for storage fees of $5,929.00 that were incurred from April 17, 2023 to August 15, 2023. *Id.* ¶ 11. Defendant Norman did not make further payment. *Id.* ¶ 10.

On or about August 14, 2023, Plaintiff issued a final invoice to Defendant Norman for the total outstanding amount owed of $42,463.30. *Id.* ¶ 12. On or about August 23, 2023, Plaintiff issued a demand letter seeking payment of $43,345.90 for past due amounts and additionally incurred storage fees. *Id.* ¶13. As of October 31, 2023, the outstanding balance, including storage fees, was $46,236.30. *Id.* ¶ 14.

### B. Procedural Background

On November 3, 2023, Plaintiff initiated this admiralty action *in rem* against Defendant Polecat's Revenge and *in personam* against Defendant Norman. Compl. The verified Complaint asserts two causes of action for: (1) breach of repair agreement and enforcement of maritime lien for necessaries; and (2) breach of contact for maritime repairs. Compl. ¶¶ 7-22. Plaintiff seeks to foreclose a maritime lien against the Vessel

and its owner, Defendant Norman, pursuant to 46 U.S.C. §§ 31301(4)-(5), 31341-31343. Pl. Mot. at 2 (ECF No. 32-1). On November 13, 2023, Plaintiff filed a proof of service indicating Defendant Norman was served with the Summons, Complaint and other related case documents by substituted service at his residence located at 2850 Cedar St., Las Vegas, Nevada on November 10, 2023. (ECF No. 10.) Defendant Polecat's Revenge was served where the Vessel was located[2] with the Summons, Complaint and other related case documents on November 8, 2023. (ECF No. 9.) After Defendants failed to appear, Plaintiff filed a request for entry of default against all Defendants on January 19, 2024. (ECF No. 12.) The Clerk of the Court entered default as to all Defendants on January 22, 2024. (ECF No. 15.)

On June 11, 2024, the District Judge granted Plaintiff's ex parte applications for the Vessel's arrest and appointment of a substitute custodian for the pendency of the action. (ECF Nos. 22, 23.) Plaintiff was appointed as the substitute custodian for the Vessel. (ECF No. 22.) On June 12, 2024, the Clerk of the Court issued a warrant for arrest of the Vessel. (ECF No. 24.) On June 13, 2024, the U.S. Marshal filed a Process Receipt and Return indicating it had arrested the Vessel, turned it over to the substitute custodian, and that it left process at the Vessel's helm on December 18, 2023.[3] (ECF No. 26). On June 18, 2024, the Court issued an amended order on Plaintiff's ex parte application for order of publication and ordered the Notice of Action *in Rem* and Arrest of Vessel be published once in *The Sacramento Bee* and once in *The Stockton Record*. (ECF Nos. 28, 30.) On July 11, 2024, Plaintiff filed Proofs of Publication of the Notice of Action *in Rem* and Arrest of Vessel by *The Sacramento Bee* and *The Stockton Record*.

---

[2] The Vessel was located at Plaintiff's business due to the repairs and storage.
[3] Review of the record indicates an executed Process Receipt and Return was filed on January 17, 2024 indicating the Vessel was arrested and turned over to Plaintiff as the substitute custodian. (ECF No. 11.) Although an order was not issued concerning the issuance of an arrest warrant and appointing a substitute custodian, this was later rectified by the District Judge's orders issuing a warrant to arrest the Vessel and appointing Plaintiff as the substitute custodian. (ECF Nos. 22-24.) The Court finds this does not impact the overall determination of the motion currently before it.

(ECF No. 31.)

On July 12, 2024, Plaintiff moved for default judgment against Defendants and set the motion for a July 15, 2024 hearing. (ECF Nos. 32, 34.) Plaintiff served the motion and supporting documents on Defendant Norman by electronic mail. (ECF No. 32-6.) Defendants did not respond to the motion for default judgment. *See* Docket. On July 31, 2024, the Court issued an order taking Plaintiff's motion under submission; vacating the hearing; ordering a written response from Defendants by August 20, 2024; and directing Plaintiff to serve Defendants with a copy of the order. (ECF No. 35.) In its July 31, 2024 Order, the Court warned Defendants that the failure to respond may result in the imposition of default judgment against them. *Id*. On August 5, 2024, Plaintiff filed a proof of service indicating Defendant Norman was served with the July 31, 2024 Order by first-class mail. (ECF No. 36.) Defendants did not respond. *See* Docket.

## II.    LEGAL STANDARDS

Under Federal Rule of Civil Procedure 55, default may be entered against a party against whom a judgment for affirmative relief is sought who fails to plead or otherwise defend against the action. *See* Fed. R. Civ. P. 55(a). However, this default does not automatically entitle the plaintiff to a judgment. *PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp. 2d 1172, 1174 (C.D. Cal. 2002) (citations omitted). The decision to grant or deny the entry of default judgment is within the district court's discretion. *NewGen, LLC v. Safe Cig, LLC,* 840 F.3d 606, 616 (9th Cir. 2016).

In determining whether to enter default judgment, courts consider the following factors:

1. the possibility of prejudice to the plaintiff;
2. the merits of the substantive claim(s);
3. the sufficiency of the complaint;
4. the amount of money at stake in the lawsuit;
5. whether there are any disputes of material fact;
6. whether the defendant's default was due to excusable neglect; and

7. the strong policy favoring decisions on the merits.

*Eitel v. McCool*, 782 F.2d 1470, 1471-72 (9th Cir. 1986). The Ninth Circuit has long disfavored default judgments, counseling that cases be decided on the merits "whenever reasonably possible." *Id*. at 1472.

Once a default is entered, all well-pled allegations in the complaint regarding liability are deemed true. *Fair Hous. of Marin v. Combs*, 285 F.3d 899, 906 (9th Cir. 2002). "On the other hand, a defendant is not held to admit facts that are not well-pleaded or to admit conclusions of law." *United States v. Cathcart*, 2010 WL 1048829, at *4 (N.D. Cal. Feb. 12, 2010) (citation omitted). "[I]t follows from this that facts which are not established by the pleadings of the prevailing party, or claims which are not well-pleaded, are not binding and cannot support the judgment." *Danning v. Lavine*, 572 F.2d 1386, 1388 (9th Cir. 1978). Necessary facts not contained in the pleadings and claims which are legally insufficient are not established by default. *DIRECTV, Inc. v. Hoa Huynh*, 503 F.3d 847, 854 (9th Cir. 2007). Further, a plaintiff's allegations regarding damages are not deemed true at default, and the plaintiff bears the burden to prove damages with evidence. *See* Fed. R. Civ. P. 55(b)(2)(C); *Geddes v. United Fin. Grp.*, 559 F.2d 557, 560 (9th Cir. 1977).

## III. DISCUSSION

Plaintiff requests the following relief be granted in its motion: (1) default judgment be entered against Defendants; (2) an order directing the U.S. Marshal to conduct an admiralty execution sale of the Vessel; and (3) the right to credit bid at the execution sale of the Vessel up to the amount of its default judgment. Pl. Mot. at 2, 11-13. Plaintiff seeks $48,539.30 in damages and storage fees, a sale of the Vessel, and an amount in *custodia legis* expenses to be finalized according to proof following the sale. *Id*. at 13-14.

### A. Jurisdiction

As a preliminary matter, a court considering whether to enter default judgment must first determine whether it has jurisdiction over both the subject matter and the parties to the case. *In re Tuli*, 172 F.3d 707, 712 (9th Cir. 1999).

The Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1333, which vests district courts with original jurisdiction over "any civil case of admiralty or maritime jurisdiction." 28 U.S.C. § 1333(1). Pursuant to Federal Rules of Civil Procedure Rule C(1) of the Supplemental Rules for Certain Admiralty and Maritime Claims, an *in rem* action may be brought "to enforce any maritime lien" or "whenever a statute of the United States provides for a maritime action in rem." Here, Plaintiff seeks to enforce a maritime lien under the Federal Maritime Lien Act, 46 U.S.C. § 31342. Pl. Mot. at 5.

The Court also finds it has *in rem* jurisdiction over the Vessel. "When suit is brought in federal court to execute a maritime lien against a vessel, Rule C permits a district court to 'issue an order directing the clerk to issue a warrant for the arrest of the vessel ... that is the subject of the action.'" *Ventura Packers, Inc. v. F/V Jeanine Kathleen*, 424 F.3d 852, 858 (9th Cir. 2005) (citing Fed. R. Civ. P. C(3) (Supplemental Rules for Certain Admiralty Maritime Claims)). *In rem* jurisdiction is obtained by serving a warrant of arrest pursuant to Federal Rules of Civil Procedure Rule C(3) of the Supplemental Rules for Certain Admiralty and Maritime Claims. *Id.* Here, the Vessel was located and arrested pursuant to maritime process in the Eastern District of California. (ECF No. 26.)

Additionally, the Court has personal jurisdiction over Defendant Norman. Defendant Norman is a resident of Nevada. Compl. ¶ 6. In determining whether the exercise of personal jurisdiction over a nonresident defendant is proper, a district court must apply the law of the state in which it sits when there is no applicable federal statute governing personal jurisdiction. *Panavision Int'l, L.P. v. Toeppen*, 141 F.3d 1316, 1320 (9th Cir.1998). California's long-arm statute provides that jurisdiction may be exercised over nonresident defendants "on any basis not inconsistent with the Constitution of this state or of the United States." Cal. Civ. Proc. Code § 410.10; *Roth v. Garcia Marquez*, 942 F.2d 617, 620 (9th Cir. 1991). The due process clause prohibits the exercise of jurisdiction over nonresident defendants unless those defendants have "minimum

contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." *Id*. (citing *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945)). Specific jurisdiction exists when (1) the non-resident purposefully directs his activities or consummates a transaction with a resident of the forum; (2) the claim is one that arises out of or relates to the defendant's forum-related activities; and (3) the exercise of jurisdiction is reasonable. *In re W. States Wholesale Nat. Gas Antitrust Litig*., 715 F.3d 716, 741-42 (9th Cir. 2013). Here, Defendant Norman, owner of the Vessel, entered into an agreement with Plaintiff for repairs and renovations to take place at Plaintiff's business located in Stockton, California. Compl. Exh. 1. Pursuant to the Contract, Plaintiff provided repairs to the Vessel and Defendant issued partial payments. *Id*. ¶¶ 9-15. In addition, the Vessel was stored at Plaintiff's business in Stockton, California, incurring storage fees. *Id.* ¶¶ 11-14. Taking these facts as true, the Court finds Defendant Norman availed himself of the privilege of doing business in California by entering into an agreement with Plaintiff, having the Vessel repaired by Plaintiff in California, and storing the Vessel in California. Additionally, "but for" Defendant Norman's conduct, Plaintiff would not have suffered harm in the form of unpaid invoices, including accruing storage fees. *See Ballard v. Savage*, 65 F.3d 1495, 1500 (9th Cir. 1995) ("We rely on a 'but for' test to determine whether a particular claim arises out of forum-related activities and thereby satisfies the second requirement for specific jurisdiction.") The Court finds that exercise of jurisdiction over Defendant Norman is reasonable. *See Sher v. Johnson*, 911 F.2d 1357, 1364 (9th Cir. 1990) (once court finds purposeful availment, it must presume that jurisdiction would be reasonable). Accordingly, the Court finds personal jurisdiction is satisfied as to Defendant Norman.

### B. Service of Process

The Court finds that Plaintiff has complied with the service requirements set forth in Federal Rules of Civil Procedure Rule C(3)(b)(i) of the Supplemental Rules for Certain Admiralty and Maritime Claims. Supplemental Rule C(3)(b)(i) provides "[i]f the property

that is the subject of the action is a vessel or tangible property on board a vessel, the warrant and any supplemental process must be delivered to the marshal for service." The U.S. Marshal's Process Receipt and Return establishes that "process [was] left within the Vessel's helm" when the Vessel was arrested and turned over to the substitute custodian. (ECF No. 26.) In addition, Defendant Norman was served with the Complaint and Summons by substituted service. (ECF No. 10). Accordingly, the Court finds proper service was made.

### C.     Notice Requirements

The Court also finds that Plaintiff has complied with the notice requirements set forth in Federal Rules of Civil Procedure Rule C(4) of the Supplemental Rules for Certain Admiralty and Maritime Claims and Local Rule 540. Supplemental Rule C(4) provides that a plaintiff must "give public notice of the action and arrest in a newspaper designated by court order and having general circulation in the district" and that "[t]he notice must specify the time under Rule C(6) to file a statement of interest in or right against the seized property and to answer." Local Rule 540 provides for *in rem* actions seeking default judgment, that "due notice of the action and arrest of the property has been given" as follows:

> (1)  By publication, see L.R. 530;
>
> (2)  By personal service on the person having custody of the property;
>
> (3)  If the property is in the hands of a law enforcement officer, by personal service on the person having custody before its possession by law enforcement agency or officer; and
>
> (4)  By personal service or by certified mail, return receipt requested, to every other person who has not appeared in the action and is known to have an interest in the property; provided, however, that failure to give actual notice to such other person may be excused upon a satisfactory showing of diligent efforts to give such notice without success.

E.D. Cal. Local Rule 540(a)(1)-(4). Review of Plaintiff's Proofs of Publication establishes Plaintiff has complied with the content requirements for the notice as set forth in Local

8

Rule 530. (ECF No. 31.) Plaintiff has also complied with Local Rules 171, 530, 540, and 580 by publishing the notice in *The Sacramento Bee* and *The Stockton Record* consistent with the Court's amended order. (ECF Nos. 30, 31.) Defendant Norman was also provided notice by being served by substituted service as the only known person who has an interest in the property. Pl. Mot. at 7, Exhs. A-C. Further, no "person who asserts a right of possession or any ownership interest in the property" has filed a timely verified statement consistent with Supplemental Rule C(6)(a). Accordingly, the time to respond has expired, no one has responded, and no one has appeared.

The Court next considers whether default judgment is appropriate under the *Eitel* factors.

### D.   *Eitel* Factors

For the following reasons, the Court finds that the *Eitel* factors weigh in favor of granting default judgment against Defendants.

#### 1.   Factor One: The Possibility of Prejudice to the Plaintiff

The first *Eitel* factor considers whether the plaintiff would suffer prejudice if default judgment were not entered, and such potential prejudice to the plaintiff weighs in favor of granting a default judgment. *See PepsiCo,* 238 F. Supp. 2d at 1177. Here, the Clerk of the Court entered default against Defendants on January 22, 2024 (ECF No. 15), and the Defendants have not participated in the litigation despite being served with the Complaint, default judgment motion, and the Court's July 31, 2024 order. *See* Docket. Plaintiff would suffer prejudice if the Court did not enter a default judgment because it would be without recourse for recovery. Accordingly, the first *Eitel* factor favors the entry of default judgment.

#### 2.   Factors Two and Three: The Merits of the Claims and the Sufficiency of the Complaint

The merits of Plaintiff's substantive claims and the sufficiency of the Complaint are considered together due to the relatedness of the two inquiries. The Court must consider whether the allegations in the Complaint are sufficient to state a claim that

9

supports the relief sought. *See Danning*, 572 F.2d at 1388; *PepsiCo, Inc.*, 238 F. Supp. 2d at 1175. Here, Plaintiff seeks to foreclose on a maritime lien against the Vessel under 46 U.S.C. § 31342 based on a breach of the Contract for unpaid fees for repairs and renovations provided, including storage fees incurred.

          a.    *Breach of Contract*

Although not addressed by Plaintiff in its motion, the Court first considers Plaintiff's breach of contract claims. Compl. ¶¶ 7-22. Plaintiff alleges that Defendant Norman breached the Contract by failing to pay for the repair and renovation services Plaintiff provided for the Vessel and the additional storage fees incurred. *Id.* Because the Court has found federal admiralty subject matter jurisdiction exists, general maritime law applies to Plaintiff's breach of contract claims. *See Umpqua Marine Ways, Inc. v. United States*, 925 F.2d 409, 411 (Fed. Cir. 1991) ("One of the ancient tenets of admiralty provides that a contract for the repair, renovation, or conversion of an existing vessel is maritime in nature because in the baptism of launching she receives her name, and from the moment her keel touches the water she is transformed, and becomes a subject of admiralty jurisdiction.") (internal quotation marks and citation omitted). "States may supplement federal admiralty law as applied to matters of local concern, so long as state law does not actually conflict with federal law or interfere with the uniform working of the maritime legal system." *Pac. Merch. Shipping Ass'n v. Aubry*, 918 F.2d 1409, 1422 (9th Cir. 1990). Here, the Court does not find any direct conflict with California law and general maritime law in assessing Plaintiff's breach of contract claims. *See, e.g.*, *Aqua-Marine Constructors, Inc. v. Banks*, 110 F.3d 663, 668 (9th Cir. 1997) (holding disputes over maritime insurance contracts may be governed by state law, as long as the state law does not clearly conflict with general maritime law). Thus, the Court applies California law to Plaintiff's breach of contract claims. To prevail on a breach of contract claim under California law, a plaintiff must establish: "(1) the existence of the contract, (2) plaintiff's performance or excuse for nonperformance, (3) defendant's breach, and (4) the resulting damages to the plaintiff." *Oasis W. Realty, LLC v. Goldman*, 51 Cal.4th

811, 821 (2011). The Complaint sufficiently alleges Plaintiff entered into a valid agreement with Defendant Norman for repairs and renovations to the Vessel. Compl. ¶¶ 7, 18, Exh. 1. Plaintiff alleges it has performed all of its obligations under the Contract and that Defendant Norman has breached the Contract by failing to make payment for the work performed on the Vessel, including incurring storage fees. *Id*. ¶¶ 9-15, 19-20. As a result, Plaintiff alleges he has been damaged. *Id*. ¶ 21. Therefore, the Court finds Plaintiff has sufficiently pled meritorious breach of contract claims.

        b.    *Enforcement of a Maritime Lien*

The Maritime Lien Act pursuant to 46 U.S.C. § 31342 provides "that a person (1) providing necessaries (2) to a vessel (3) on the order of the owner or person authorized by the owner has a necessaries lien on the vessel and may bring a civil action in rem to enforce that lien." *Ventura Packers, Inc. v. F/V JEANINE KATHLEEN*, 305 F.3d 913, 922 (9th Cir. 2002). "'[N]ecessaries' includes repairs, supplies, towage, and the use of a dry dock or marine railway." 46 U.S.C. § 31301(4). The Complaint sufficiently alleges Plaintiff provided repairs and renovations to the Vessel pursuant to the Contract and that the Vessel incurred repair fees which were only partially paid for by Defendant Norman. Moreover, Defendant Norman procured Plaintiff's services when he executed the Contract and therefore is presumed to have the authority, as the owner of the Vessel, to procure necessaries for it. *See* 46 U.S.C. § 31342(a). Accordingly, the Court finds Plaintiff has sufficiently alleged it has a valid maritime lien over the Vessel pursuant to 46 U.S.C. § 31342.

The Court therefore finds the second and third *Eitel* factors favor the entry of default judgment.

        3.    Factor Four: The Sum of Money at Stake in the Action

Under the fourth *Eitel* factor, the Court considers the amount of money at stake in relation to the seriousness of Defendants' conduct. *PepsiCo,* 238 F. Supp. 2d at 1176. Plaintiff seeks damages in the amount of $48,539.30 for past due vessel repair fees and storage fees. Pl. Mot. at 10. The sum of money here is significant, though not

11

unreasonable as it is directly connected to the Contract and respective breaches, as well as Plaintiff's enforcement of its maritime lien. Accordingly, the fourth *Eitel* factor favors the entry of default judgment.

### 4. Factor Five: The Possibility of Dispute Concerning Material Facts

The facts of this case are relatively straightforward, and Plaintiff has provided the Court with well-pleaded allegations and documentation supporting its claims. *See generally* Compl. Here, the Court may assume the truth of well-pleaded facts in the complaint (except as to damages) following the clerk's entry of default, and thus, there is no likelihood that any genuine issue of material fact exists. *See, e.g., Elektra Entm't Group Inc. v. Crawford*, 226 F.R.D. 388, 393 (C.D. Cal. 2005) ("Because all allegations in a well-pleaded complaint are taken as true after the court clerk enters default judgment, there is no likelihood that any genuine issue of material fact exists."); *accord Philip Morris USA, Inc. v. Castworld Prods., Inc.*, 219 F.R.D. 494, 500; *PepsiCo*, 238 F. Supp. 2d at 1177. Accordingly, the fifth *Eitel* factor favors the entry of default judgment.

### 5. Factor Six: Whether Default was Due to Excusable Neglect

Upon review of the record before the Court, there is no indication that the default was the result of excusable neglect. *See PepsiCo*, 238 F. Supp. 2d at 1177. Plaintiffs served Defendants with the Summons and the Complaint. (ECF Nos. 9, 10, 26.) Plaintiff also served Defendant Norman with notice of its application for default judgment and with the Court's July 31, 2024 Order. Pl. Mot. at 11; ECF Nos. 32-6, 35. Notice of the pending lawsuit was also published in *The Sacramento Bee* and *The Stockton Record*. (ECF No. 31.) Despite ample notice of this lawsuit and Plaintiff's intention to seek a default judgment, neither Defendants, nor any other interested person, appeared in this action or filed a response or otherwise challenge the motion for default judgment. Accordingly, the sixth *Eitel* factor favors the entry of default judgment.

### 6. Factor Seven: The Strong Policy Favoring Decisions on the Merits

"Cases should be decided upon their merits whenever reasonably possible." *Eitel*, 782 F.2d at 1472. Although the Court is cognizant that this factor weighs against

granting default judgment, the policy favoring decisions on the merits does not, by itself, preclude the entry of default judgment where a defendant fails to appear or defend itself in an action. See *PepsiCo,* 238 F. Supp. 2d at 1177; see also *Craigslist, Inc. v. Naturemarket, Inc.*, 694 F. Supp. 2d 1039, 1061 (N.D. Cal. 2010). The Court finds that *Eitel* factors one through six outweigh the preference in policy favoring decisions on the merits, thereby rendering default judgment proper.

### 7. Conclusion

Upon consideration of the *Eitel* factors, the Court concludes that Plaintiff is entitled to the entry of default judgment against Defendants as to its breach of contract claims and enforcement of a maritime lien. The Court next determines the amount of damages to which Plaintiff is entitled.

### E. Terms of Judgment

#### 1. Damages

Plaintiff seeks judgment in the amount of $48,539.30 for unpaid repair work and storage fees. Pl. Mot. at 10. Because the principal amount and storage fees relates to the Contract, the Court finds Plaintiff is entitled to $48,539.30.

#### 2. U.S. Marshal Sale of the Vessel

Plaintiff also seeks an order authorizing the U.S. Marshal to conduct an admiralty execution sale of the Vessel in order to enforce its maritime lien on the Vessel and execute on its judgment. Pl. Mot. at 11-12. The Court finds that Plaintiff's request to foreclose on its maritime lien should be granted and the Vessel be sold by the U.S. Marshal in accordance with local admiralty rules and procedures. See Local Rule 570. Pursuant to Local Rule 570(a), a notice of the sale of property in an action *in rem* must be published daily in accordance with Local Rule 171 for a period of four (4) days before the date of sale. Here, the Court will exercise its discretion and specify additional terms for publication of the sale. See E.D. Cal. Local Rule 570(b). The Court finds *The Sacramento Bee* and *The Stockton Record* are appropriate for publication because the Vessel is being stored in Stockton, California. Plaintiff should publish notice of the sale

Case 2:23-cv-02550-DAD-CSK   Document 40   Filed 02/14/25   Page 14 of 17

daily for seven (7) consecutive days before the date of sale in *The Sacramento Bee* and *The Stockton Record*. In addition, Plaintiff should post a notice of sale form in three of the most public places in the area in which the Vessel is located and at the place where the Vessel is to be sold for seven (7) consecutive days before the date of the sale.

### 3. Credit Bid and *Custodia Legis* Expenses

In connection with the U.S. Marshal sale of the Vessel, Plaintiff requests the right to credit bid at the execution sale of the Vessel up to the amount of its default judgment. Pl. Mot. at 12. In addition, Plaintiff seeks leave to file an additional evidentiary affidavit establishing the amount of its *custodia legis* expenses to be added to the judgment amount as its maximum credit bid amount. *Id*. at 13. Although the Court is not required to, the Court finds it appropriate that Plaintiff be allowed to credit bid without a deposit up to the extent of his judgment. *See Benicia Harbor Corp. v. M/V IDA LOUISE*, 2024 WL 281301 (E.D. Cal. Jan. 25, 2024) (authorizing plaintiff to credit bid at the sale of the vessel); *Cap One, Inc. v. MV Sierra Rose*, 2021 WL 3047278, at *6 (E.D. Cal. July 20, 2021), *report and recommendation adopted*, 2021 WL 4443094 (E.D. Cal. Sept. 28, 2021) (permitting, but not requiring, plaintiff to credit bid at the sale of the vessel without cash deposit up to the extent of its judgment). Local Rule 570(b) requires a person "whose bid is accepted shall immediately pay the Marshal for deposit in the Court's registry either the full purchase price if the bid is no more than $1,000 or a deposit of $1,000 or 10 percent of the bid, whichever is greater, if the bid exceeds $1,000." The Court may, however, "specify different terms in any order of sale." E.D. Cal. L.R. 570(b). Here, the Court will exercise its discretion and recommend Plaintiff be permitted to credit bid up to the amount of the judgment. Additionally, the Court also finds that Plaintiff is entitled to its *custodia legis* expenses, provided Plaintiff establishes the expenses are appropriate and substantiates the amount claimed with a cost bill to be filed post-judgment. *See Bos. Safe Deposit & Tr. Co. v. Motor Yacht Dulcinea*, 1991 WL 323126, at *2 (N.D. Cal. Sept. 30, 1991) ("*Custodia legis* claims must derive from services (maintenance, storage, insurance, etc.) provided subsequent to a vessel's arrest by

court order.")

## IV. CONCLUSION

For the reasons set forth above, it is HEREBY RECOMMENDED that:

1. Plaintiff's motion for default judgment (ECF No. 32) be GRANTED;

2. Plaintiff be awarded $48,539.30 in damages, and *custodia legis* costs (pursuant to a cost bill to be filed post-judgment);

3. The U.S. Marshal be ordered to sell the Vessel, and allow Plaintiff to credit bid at such sale, under the terms below and in accordance with all applicable statutes and local rules;

4. The Vessel be sold free of all mortgages, liens, and other encumbrances in an admiralty execution sale pursuant to Supplemental Rules for Admiralty or Maritime Claims and Asset Forfeiture Actions ("Suppl. Rule"), Rule E(9)(a) and all applicable local rules, including Local Rule 570. The proceeds of the sale shall be paid into Court to await disbursement upon further order of the Court pursuant to Supplemental Rule E(9)(b). If the net proceeds of the Vessel's sale are less than Plaintiff's judgment herein, Plaintiff will be allowed to seek any deficiency against the Vessel's owner, Defendant Norman, *in personam*. If the proceeds from the sale exceed the Plaintiff's total damages as reflected in the amended judgment including Plaintiff's authorized *custodia legis* costs, the excess amount shall be paid to Defendant Norman;

5. The sale commence at a time and place designated by the U.S. Marshal for the Eastern District of California, who will conduct the sale as set forth in Local Rule 570;

6. Plaintiff be ordered to publish notice of the sale daily for seven (7) consecutive days before the date of sale: (a) in *The Sacramento Bee* and *The Stockton Record*; and (b) in three of the most public places in the area in which the Vessel is located and at the place where the Vessel is to be;

15

7. At the sale of the Vessel, any minimum bid and any bidding increment shall be set at the U.S. Marshal's discretion;

8. Pursuant to Local Rule 570(b), Plaintiff may credit bid for the Vessel at the sale for any and all amounts up to the total judgment of $48,539.30, plus the amount of its *custodia legis* expenses established by affidavit. If Plaintiff's credit bid is the highest bid, Plaintiff shall not be required to make a cash deposit or a subsequent cash payment into the Registry of the Court as is required for other bidders under Local Rule 570(b). The U.S. Marshal is authorized and directed to accept such credit bids from Plaintiff at the sale of the Vessel. If a sale of the Vessel to Plaintiff is confirmed for an amount based only on a credit bid: (a) Plaintiff will be allowed to pursue a deficiency action against the Vessel owner, *in personam*, for any outstanding amounts still owed under its default judgments; (b) Plaintiff will be responsible to pay the fees, costs, and commissions due to the U.S. Marshal for the arrest and sale of the Vessel; and (c) Plaintiff will be responsible to pay any other *custodia legis* fees or costs applicable to the Vessel;

9. At the conclusion of the sale, the U.S. Marshal shall file a written report to the Court pursuant to Local Rule 570 (e); and

10. Should no successful bid for the Vessel be accepted, or if for any other reason the sale of the Vessel is not completed, then the U.S. Marshal shall report that to the Court and the Vessel shall remain under arrest pending further order of the Court.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(1). Within 14 days after being served with these findings and recommendations, any party may file written objections with the Court and serve a copy on all parties. This document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Any

reply to the objections shall be served on all parties and filed with the Court within 14 days after service of the objections. Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153, 1156-57 (9th Cir. 1991).

Dated: February 13, 2025

CHI SOO KIM
UNITED STATES MAGISTRATE JUDGE

4, jhma2550.23